IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| WUDI INDUSTRIAL (SHANGHAI), CO., LTD., <br><br>    Plaintiff/Counterclaim Defendant, <br><br>v. <br><br>WAI L. WONG, <br><br>    Defendant/Counterclaim Plaintiff, <br><br>and <br><br>GT OMEGA RACING, LTD., <br><br>    Defendant/Counterclaim Plaintiff. | Civil Action No. 1:20-cv-908 |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on remand from the United States Court of Appeals for the Fourth Circuit for further proceedings consistent with its order of June 5, 2023.

This is a trademark case that has settled. However, Plaintiff/Counterclaim Defendant, Wudi Industrial (Shanghai) Co., Ltd. ("Wudi") has breached the Settlement Agreement, and Defendant/Counterclaim Plaintiff, Wai L. Wong ("Wong"), together with his company, Counterclaim Plaintiff, GT Omega Racing Ltd. ("GTOR"), now move to enforce the parties' Settlement Agreement. The Settlement Agreement, over which the Court has retained jurisdiction, contains detailed provisions that restrict Wudi's social media advertising and promotion. Wudi and those acting in concert with it are violating those restrictions.

Wudi commenced this action pursuant to 15 U.S.C. § 1071(b), seeking judicial review of the final decision issued by the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office ("TTAB") cancelling Wudi's federal trademark registration for a stylized word mark (the "GTRACING Mark") for "Chairs; Cots; Desks; Furniture; Furniture of metal; Office furniture; Seats; Serving trolleys; Sofas; [and] Stools" in International Class 20. The trademark cancellation proceeding had been brought by Wong, who Wudi then named as the defendant in this action as required by § 1071(b)(4). Wong answered the complaint, denying that Wudi was entitled to a judgment overturning the TTAB cancellation decision, and Wong filed a trademark infringement counterclaim, alleging that Wudi's use of the GTRACING Mark in the United States infringed Wong's statutory and common law rights in certain marks, including Wong's senior GT OMEGA and GT OMEGA RACING trademarks. Wudi answered the counterclaim, denying liability.

During the discovery period, Wong was granted leave to amend the counterclaim and to join GTOR as an additional counterclaim plaintiff because it is an entity related to Wong that sells goods in the United States using Wong's trademarks. Wudi answered the amended counterclaim, denying liability, and moved dismiss one count of the five-count amended counterclaim, which motion was granted, and Count V was dismissed.

On an extended schedule, approved by the Court, the parties completed fact and expert discovery, appeared for the final pretrial conference, and filed their Rule 26(a)(3) disclosures. The bench trial for adjudication of all claims and counterclaims had been set to commence on August 2, 2021. During the discovery period, the parties participated in a settlement conference held by the Magistrate Judge on March 1, 2021.

Although the case did not settle that day, the Magistrate Judge had facilitated the parties' settlement communications, which then continued through May 2021.

In late May 2021, the parties executed a written Settlement Agreement to resolve all claims and counterclaims asserted in this action, as well as to resolve all other trademark disputes the parties have in other jurisdictions throughout the world. A copy of the executed Settlement Agreement, together with its Schedules A-G, was filed under seal. Subject to the terms of the Settlement Agreement, the claims and counterclaims asserted in this action will be released and not be further litigated. Instead, the parties' rights, obligations, and remedies are now stated in the Settlement Agreement, which the Court retained jurisdiction to enforce. The action has been stayed pending performance of certain provisions of the Settlement Agreement and entry of a final judgment.

Essentially, the parties agreed that each side could continue to use its pre-existing marks subject to certain geographic and product carve-outs that enable or limit specific rights. Without revealing the confidential terms of the settlement, the substance of the material terms now at issue may be summarized as follows:

- By agreement, the parties' rights to use their own marks will be subject to Carve-Outs. There are two types of carve-outs: First, there is a geographic carve-out—*i.e.*, a geographic region in which a party's rights are enabled or excluded, as the case may be. Second, there are certain product carve-outs—*i.e.*, specific product-lines for which a party's rights are enabled or excluded, as the case may be.

3

- This Order focuses on the geographic "European Carve-Out," which is defined in detail in the Settlement Agreement. This carve-out (also called the "ECO") was drawn solely for Wong's benefit. The ECO includes the European Union countries, the United Kingdom countries, as well as other specified countries.

- The social media restrictions in the ECO now at issue apply to Wudi. There is no reciprocal restriction on Wong. The social media restrictions on Wudi's advertising and promotions in the ECO are as follows:

  > In the European Carve-Out, Wudi ... will not use on Facebook or any other social media platform (*e.g.*, Instagram, Twitter, TikTok), any terms that include (with or without other words) any of the following: "gt racing" or "gtracing" in connection with goods in International Class 20 or Wong Class 9 and 28 Good.

  "International Class 20" is a trademark term-of-art, covering virtually all varieties of furniture, including chairs and desks. *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE, Chap. 1400, §§ 1400–1401.02(a) (July 2021) (identifying and adopting International Trademark Classes of goods). The Settlement Agreement specifies that "Wong Class 9 and 28 Goods" are subsets of International Class 9 goods (*i.e.*, electronics and computers) and International Class 28 goods (*i.e.*, games, including a "video game apparatus").

- The parties agreed that the Settlement Agreement, "including the enforcement provisions herein, will be binding on the Parties, together with their shareholders, officers, directors, employees, parents, subsidiaries, affiliates, successors, assigns, and any individual or entity acting in concert with any of the foregoing."

4

The Settlement Agreement was executed in late May 2021. Immediately after execution of the Settlement Agreement, however, Wudi proposed to modify Paragraph 6(b) by eliminating the social media restrictions in the ECO, which Wong refused. After further negotiations regarding other provisions, the Settlement Agreement was restated as of September 8, 2021, in which the social media restrictions on Wudi were not changed.

After a sell-off period (June–December 2021), all restrictions on Wudi's use of "GTRACING or any derivation thereof," including the social media restrictions in Paragraph 6(b), became effective as of January 1, 2022. Despite the long lead-time to implement the social media restrictions, Wudi began expanding its use of "gt racing" and "gtracing" on its own proprietary social media; moreover, Wudi entered into financial agreements with third-party promoters pursuant to which those promoters are being compensated for using "gt racing" and "gtracing" on their social media posts.

As of January 1, 2022, and continuing thereafter, Wudi, individually has committed numerous breaches of the social media restrictions set forth in Paragraph 6(b) of the Settlement Agreement. Furthermore, Wudi, acting in concert with others who are bound under Paragraph 11 of the Settlement agreement, has caused numerous other breaches of the social media restrictions in the ECO.

Wudi extensively advertises and markets its products on the Internet, using posts on social media platforms like Instagram, Twitter, and TikTok. Wudi also posts YouTube videos of someone using its products. Wudi also has one or more Facebook pages displaying its products. Wudi also uses third-party promoters who promote Wudi's products on social media in exchange for compensation. Since January 1, 2022,

Wudi has continued to advertise and promote its International Class 20 goods using Instagram, Twitter, TikTok, and YouTube posts that are accessible in the ECO and which include the terms "gt racing" or "gtracing," or both. On its official Instagram page, Wudi made posts that are accessible in the ECO, promote its own International Class 20 gaming chair, and use the term "gtracing" in violation of the social media restrictions stated in the Settlement Agreement. As of March 18, 2022, there were at least twenty-one such posts made after January 1, 2022. Wudi has not taken down any posts it made on Instagram before January 1, 2022, which are still accessible to consumers in the ECO. There are more than 450 "gtracing" posts on Instagram that Wudi made prior to January 1, 2022, which are still accessible in the ECO, and which promote Wudi's International Class 20 gaming chairs using the terms "gt racing" or "gtracing," or both.

Since January 1, 2022, Wudi also has continued to advertise and promote its International Class 20 goods using Twitter posts, TikTok posts, and YouTube videos that are accessible in the ECO and which include the terms "gt racing" or "gtracing," or both. In recognition that these posts are not otherwise permitted, Wudi has applied nearly invisible "disclaimers" to certain images, saying something like "GTRACING PRODUCTS ARE NOT AVAILABLE IN EU AND UK REGIONS."

Wudi uses a lot of third parties to promote its products. The Settlement Agreement addresses this in Paragraph 11 (emphasis added):

> The [Settlement] Agreement, including the enforcement provisions herein, will be binding on the Parties, together with . . . any individual or entity acting in concert with any of the foregoing.

Despite this clear prohibition, Wudi has continued to recruit and compensate third parties to act in concert with Wudi to promote and advertise Wudi's International Class 20 gaming chairs, as well as other products that compete with Wong Class 9 and 28 goods, using the words "gt racing" or "gtracing" in social media posts that reach the ECO.

There are at least five types of individuals and entities who are acting in concert with Wudi to make posts in violation of the social media restrictions. Wudi actively recruits and compensates hundreds of individuals to post social media promotions using "gt racing" or "gtracing" in some format to drive consumer traffic to Wudi's various websites. Wudi calls these individuals "Affiliates," and they are compensated by Wudi for these promotions. These Affiliates use the social media platforms just as Wudi does in violation of the social media restrictions in Paragraph 6(b), and they do so acting in concert with Wudi who recruits and pays them. These Wudi Affiliates often use links on their posts that allow Wudi to track transactions attributable to a particular Affiliate. The Affiliate may post a YouTube video of himself using and talking about a Wudi product and include a personal link offering a discount on a GTRACING gaming chair. When a sale is consummated through that link, the Affiliate is compensated. Wudi has similar financial relationships with influencers to promote Wudi goods in exchange for compensation.

After signing the Settlement Agreement, Wudi formed a partnership with Manchester City Esports, an entity based in Manchester, England, UK, to promote GTRACING International Class 20 game chairs. Manchester City Esports violative social media posts promote gaming chairs, which are disseminated in concert with

7

Wudi and are accessible in the ECO. Manchester City's Twitter page promotes Wudi's gaming chairs in the ECO in violation of Paragraphs 6(b) and 11. This promotion is not merely in the ECO, it is in Wong's backyard in the UK, and promotes Wudi's International Class 20 gaming chair using the prohibited term "gt racing."

Wong has provided representative examples of violations committed by Internet retailers and consumer traffic generators "acting in concert with" Wudi to promote Wudi's International Class 20 goods in the ECO using terms "gt racing" and "gtracing." Wudi compensates these third parties for their promotional posts, and so it is indisputable that they are "acting in concert with" Wudi. Thus far, Wudi has refused to stop any of these third parties from violating the social media restrictions that apply in the ECO.

A party alleging breach of the Settlement Agreement must give written notice describing the nature of the alleged breach, and the other party shall have fifteen (15) days from receipt of the written notice to cure such breach. After repeatedly seeking to resolve these issues informally, Wong sent formal written notice to Wudi on January 20, 2022, commencing a fifteen-day cure period. Wong is entitled to enforcement of the contract and to require Wudi to live up to their agreement.

The United States Court of Appeals for the Fourth Circuit remanded this case for the Court to apply the four-factor test set out in eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006). The Court must ascertain whether Wong has shown: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

warranted; and (4) that the public interest would not be disserved by a permanent injunction.

As to eBay's first two factors, Wudi's violative use of the "gt racing" mark irreparably harms Wong, and money damages are inadequate to remedy this harm. When a settlement agreement not to use a trademark is breached, the injury is irreparable, and the legal remedy of damages is inadequate due to the continuing injury to the goodwill of the mark. Here, Wudi's use of the "gt racing" mark in the ECO creates a likelihood of confusion with Wong's marketing and may misdirect potential consumers in the ECO. Further, Wudi's breach of the Agreement not to use the "gt racing" mark in the ECO causes an injury to the goodwill and reputation of Wong and GTOR's marks. "Such a reputational harm is sufficient to demonstrate irreparable injury flowing from the breach of a settlement agreement restricting the breaching party's use of a trademark." Dewberry Eng'rs Inc. v. Dewberry Grp., Inc., 77 F.4th 265, 279 (4th Cir. 2023). And while Wudi's breach of the Agreement is ongoing, damages are an inadequate remedy because the injury to the goodwill associated with the "gt racing" mark continues alongside the breach. See id. at 288 (affirming a permanent injunction when the defendant's use of a trademark breached its settlement agreement with the plaintiff).

Wong also satisfies eBay's third, balance-of-hardships factor. When one party uses a trademark without permission, that party "possesses no legal right to continue its current course of conduct and therefore cannot claim hardship from an injunction restraining that which it is legally prohibited from doing." Dewberry Eng'rs Inc. v. Dewberry Grp., Inc., 2022 WL 1439105, at *4 (E.D. Va. May 6, 2022), aff'd, 77 F.4th 265

(4th Cir. 2023). Here, Wudi cannot claim lost revenue as a "hardship" in this equation. Because the lost revenue derives from Wudi's prohibited sales in ECO, forgoing that revenue is a consequence of complying with the Agreement—not a novel hardship imposed by a permanent injunction. And the costs of entering compliance with the Agreement should not surprise Wudi now. While this injunction will require Wudi to alter its marketing activities, those alterations are practicable and were a foreseeable consequence of the Agreement. Balanced against the ongoing injury to Wong described above, Wudi's purported hardships fail to tip the scale.

Lastly, under eBay's fourth factor, imposing a permanent injunction serves the public interest. By enjoining Wudi from violating the Agreement, the Court preserves each party's benefit of the bargain. When parties ignore contractual obligations, particularly settlement agreements, the public is disserved. It is in the public interest for parties to live up to their agreements. Wong obtained Wudi's promise to limit their geographic use of certain terms in exchange for concessions Wudi sought, such as Wong's agreement to dismiss their claims against Wudi and permit Wudi's use and registration of certain marks in defined locations. Wong also received monetary compensation as part of the Agreement, but the Court cannot divorce that money from the broader negotiated settlement of the parties. By enjoining Wudi from violating the Agreement, the Court enforces the negotiated terms of the agreement entered into by sophisticated parties; parties who asked the Court to enforce their agreement.

Wong satisfies all four eBay factors, and a permanent injunction is warranted. An appropriate order shall issue.

Alexandria, Virginia
February 20, 2024

_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

11